FILED
August 6, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

IN THE
THIRD COURT OF APPEALS
COMAL COUNTY, TEXAS

APPELLANT

Douglas W. Kirk

V.

APPELLEE

Plano Independent School District, et al

# NO. 03 -15-00211-CV

# Appellant's Brief on the Merits

Filed by Douglas Kirk, Appellant, pro se

Douglas Kirk
1850 Old Sattler Road
Canyon Lake, TX 78132

(830) 237-7313

dougkirk@gvtc.com



RECEIVED
AUG 0 6 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

# NO. 03 -15-00211-CV

## IN THE
## THIRD COURT OF APPEALS
## AUSTIN, TEXAS

Douglas  W. Kirk V. Plano Independent School District, Et Al

Original Proceeding from the 22nd District Court,
The Honorable R. Bruce Boyer, Presiding

Appellant's Brief on the Merits

Douglas W. Kirk
1850 Old Sattler Road,
Canyon Lake, Texas 78132
Telephone: (830) 2376-7313

*Pro Se Litigant*

- 1 -

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.1(a), appellant presents the following list of all parties and names and addresses of its counsel:

**Appellant/Plaintiff:**

Douglas W. Kirk

**Counsel:**

Douglas W. Kirk (*Pro Se*)
1850 Old Sattler Road
Canyon Lake, TX 78132
Telephone: (830) 237-7313

**Respondent:**

The Honorable R. Bruce Boyer
22th Judicial District Court
New Braunfels, Texas
789 Main Street
New Braunfels, Texas 12345

**Appellee/Defendant:**
Plano Independent School District
Nancy Humphrey
Anika Vaughan
Joseph Parks
Courtney J. Washington

**Counsel:**
Stephen R. Marsh
Texas State Bar No. 13019700
David Klosterboer & Associates
1301 East Collins Boulevard
Suite 490
Richardson, TX 75081
Telephone: (214) 570-6292

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL........................................................2

TABLE OF CONTENTS.................................................................................3

TABLE OF AUTHORITIES...........................................................................4

STATEMENT OF THE CASE.........................................................................5

STATEMENT REGARDING ORAL ARGUMENTS.......................................6

ISSUES PRESENTED....................................................................................7

STATEMENT OF FACTS..............................................................................8

SUMMARY OF THE ARGUMENT..............................................................12

ARGUMENT...............................................................................................16

PRAYER......................................................................................................37

APPENDIX..................................................................................................38

# TABLE OF AUTHORITIES

## Cases

*Catalina Development, Inc. v. County of El Paso*, 121 s.w.3d 704, 704
(tex.203)..................................................................................................14, 34, 35

*City of Corpus Christi v Eby*, Not Reported in S.W3d, 2011 WL 1437002,
Tex.App. - Corpus Christi, 2011......................................................................13, 20

*Gallegos v. Escalon*, 918 S. W. 2d 62 (Tex. App.—Corpus Christi 1996...14, 22, 23

*Gonzalez v. Ison-Newsome*, 68 S. W. 3d 2 (Tex. App. --Dallas 1999)...............27, 28

*Hinterlong v. Clements*, 109 S.W. 3d 611 (Texas App.—Fort Worth 2003)......24-26

*Jerrell D. INMAN, Sr., Appellant, v. CITY OF KATY and Billy Johnson, in his
Capacity as Assistant Chief of Police, Appellees*, 900 S. W.2d 871 (1995)...........33

*Mission Consol. Independent School District v. Garcia*, 253 S. W. 3d 653
(Tex. 2008)..............................................................................................................22

*Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379 (Tex.App.-
For4 Worth 2008 no pet)........................................................................................18

*Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954 (Tex.App.-Beaumont 1991,
no writ)....................................................................................................................20

## Statutes

Texas CIVIL PRACTICE AND REMEDIES CODE, TITLE 4. LIABILITY IN
TORT, CHAPTER 73. LIBEL

Texas CIVIL PRACTICE AND REMEDIES CODE, TITLE 5. GOVERNMENTAL
LIABILITY, CHAPTER 101. TORT CLAIMS

EDUCATION CODE, TITLE 2. PUBLIC EDUCATION, SUBTITLE D. EDUCA-
TORS AND SCHOOL DISTRICT EMPLOYEES AND VOLUNTEERS, CH.22

## STATEMENT OF THE CASE

Nature of the Case:

Appellant/Plaintiff Douglas Kirk brought a civil defamation cause of action against Appellee/Defendants Plano Independent School District, Nancy Humphrey, Anika Vaughan, Joseph Parks and Courtney J. Washington as a result of libel *per se* suffered because of actions performed beginning January 28, 2013. Appellant alleges Appellee acted outside governmental duties and functions.

Respondent:

The Honorable R. Bruce Boyer, 22nd District Court, Comal County, Texas.

Respondent's Action:

March 9, 2015, the trial court entered an Order Granting Motion To Dismiss employees Nancy Humphrey, Anita [sic] Vaughn [sic], Joseph Parks and Courtney J. Washington, and, Plano Independent School District. Respondent ordered that Appellant take nothing by way of his suit.

## STATEMENT REGARDING ORAL ARGUMENTS

Appellant does not seek oral arguments.

## ISSUES PRESENTED

1. Did the trial court err in dismissing the case under the Texas Tort Claims Act (Texas CIVIL PRACTICE AND REMEDIES CODE, TITLE 5. GOVERNMENTAL LIABILITY, CHAPTER 101. TORT CLAIMS) when the case was actually filed under the Texas Defamation Statute (Texas CIVIL PRACTICE AND REMEDIES CODE, TITLE 4. LIABILITY IN TORT, CHAPTER 73. LIBEL)?

2. Did the trial court err in applying the Texas Tort Claims Act with respect to a school district in a case that does not involve motor vehicles?

3. Did the trial court err and violate the Texas Tort Claims Act by failing to allow Appellant to exercise provisions in the statute, to wit, "remedies additional"?

4. Did the trial court err in failing to require Appellee to present a defense of official immunity to back its claim of immunity?

5. Did the trial court err in failing to recognize Appellant's claim of waiver of immunity granted by conduct, despite evidence produced by Appellant?

6. Did the trial court fail to consider factual evidence presented by Appellant, on "a case-by-case basis," to establish waiver-by-conduct?

## STATEMENT OF FACTS

Appellant, Douglas Kirk, had a friend by the name of Melanie Lauren Smith, who was in an abusive relationship with her husband, Bramlette Jason Smith. On September 11, 2011 and again on December 2, 2012, Melanie Lauren Smith reached out to Douglas Kirk seeking his assistance in getting away from her husband, to which Douglas Kirk and Rittler Strachan, R.N., responded the first time, and Douglas Kirk and Michael Wayne Davis responded the second time.

Bramlette Jason Smith evidently told his sister, Appellee school teacher Anika Lee Vaughan, about Douglas Kirk's helping his wife. Bramlette Jason Smith is on record in the court system of having abused his wife beginning on November 3, 2009 and ending on May 26, 2013. Bramlette Jason Smith pled guilty to "Assault Causes Bodily Injury Family Violence" (Case No. 006-84632-2013, County Court at Law 6, 380th District Court) on February 17, 2014, and was divorced from Melanie Lauren Smith on August 12, 2014 (Case No.380-56185-2012, 380th District Court, Collin County, Texas).

On January 28, 2013, Appellee school teacher Anika Lee Vaughan wrote an e-mail and sent it to Appellee school principal Courtney J. Washington and Appellee Director of Security Joseph Parks in which she made a series of false statements of verifiable fact about Douglas Kirk--which Appellant contends amount to libel *per se*,

- 8 -

identifying him as a stalker, a crime for which he has never been charged, tried or convicted. (On September 22, 2011, Bramlette Jason Smith did accuse Douglas Kirk of stalking after Kirk and nurse Strachan responded to Melanie Lauren Smith's plea for help the first time, and a police investigation was started in the matter. On October 24, 2011, the case was closed and labeled "no information" by State Attorney's investigator Adam Reith.)

Douglas Kirk became aware of the libelous e-mail and an e-mail exchange by Appellees on July 1, 2013 upon the fulfilment of an open records request by the Plano Independent School District. Douglas Kirk then filed a Level I grievance on July 8, 2013, under Plano Independent School District (PISD) board policy, which was denied on July 22, 2013. In the denial, PISD Chief Human Resources officer Tamria Griffin indicated that the e-mail was a "private matter" and the district had no intention of taking any action against Vaughan when an employee acts outside the scope of his or her employment. In an attempt to clear his name and to set right the lies that were being written and passed around about him, Douglas Kirk appealed the result to a Level II Grievance on August 8, 2013. He did this under published PISD board policy, only to be misled by the PISD attorney Brandy Davis that he could appear at the Level II hearing via telephone (as had been done in the past), or, not appear at all. Douglas Kirk made himself available but was not called for the

hearing and the matter was dismissed by PISD, under the direction of Appellee Nancy Humphrey, who was the PISD Board President. (Humphrey did not receive a board vote to authorize this action.) PISD indicated the grievance was dismissed August 23, 2013 because Douglas Kirk *was not present* at the hearing, even though the offer was made to him through PISD counsel *not to be physically present.*

Exhausting the administrative remedies, Douglas Kirk then sued the Appellees in both their official and individual capacities under Texas Statute, Civil Practice and Remedies Code, Title 4, Chapter 73. LIBEL. Douglas Kirk sued as he did because PISD stated the e-mail constituted private matters and was outside the duties and functions of Anika Lee Vaughan, and yet, the PISD provided resources to publish and re-republish the original e-mail and to transmit a related e-mail exchange, and threatened to take police action against Douglas Kirk (based upon the libelous e-mail). PISD also used public resources to dismiss the grievance without a hearing and the Board President, Appellee Nancy Humphrey, acted without board authority.

Upon being sued by Douglas Kirk, the Appellee then denied the allegations (February 24, 2014) and stated as its number one defense that the "Plaintiff's claim is barred by governmental immunity." Appellee moved (March 3, 2014) for a dismissal of the employees under the Texas Tort Claims Act.

The trial judge did not rule on the original motion for dismissal. The Appellee

moved for dismissal a second time (October 1, 2014), but in the second dismissal moved that the employees and PISD be dismissed *simultaneously* under the TTCA. The first item in Defendant's Motion to Dismiss under "Introduction" was "The Defendants have immunity to the claims of the Plaintiff," but Appellee, never offered an affirmative defense to the trial judge to back up official immunity.

Appellant argued before the trial judge both in writing and orally April 4, 2014, August 14, 2014 (oral), December 14, 2014 and March 5, 2015 (oral), that his case was not filed under the TTCA, citing that the statute only applied to school districts when motor vehicles are involved and that Appellee's *conduct* waived any claims of immunity. Appellee again alleged immunity but again offered no defense and depended upon the TTCA for protection. Douglas Kirk pointed out that the TTCA acknowledged that there are "remedies additional" and he made the case that the PISD waived governmental immunity by their conduct and he cited written evidence where PISD stated the original e-mail was outside the scope of employment of the the employee and therefore was of no interest to PISD.

Upon a second hearing before the trial judge March 5, 2015 (oral), the judge heard argument from both sides and ultimately dismissed the entire case March 9, 2015.

Appellant then appealed to the Third Court of Appeals April 6, 2015.

- 11 -

## SUMMARY OF THE ARGUMENT

It appears as though the Texas Tort Claims Act (TTCA) was created to make it *easier* for citizens to sue certain government entities under specifically enumerated circumstances. In the case of school districts, the statute specifically says that it applies only in cases involving motor vehicles ("SUBCHAPTER C. EXCLUSIONS AND EXCEPTIONS. Sec. 101.051. SCHOOL AND JUNIOR COLLEGE DISTRICTS PARTIALLY EXCLUDED. Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district.")

The TTCA acknowledges that there are additional remedies, suggesting that if citizens can advance another theory regarding suit, then that is permissible and is not prevented by the TTCA. ("SUBCHAPTER A. GENERAL PROVISIONS Sec. 101.003. REMEDIES ADDITIONAL. The remedies authorized by this chapter are in addition to any other legal remedies.")

The TTCA was never intended to encumber citizens who have legitimate claims against government entities and can demonstrate that when a government entity acts outside its duties and functions, a waiver-of-conduct is granted and a suit may move forward.

The Appellant sued both individuals and a government entity because there was movement between individual status and employee status, with individuals

- 12 -

taking actions that they then used the government entity to further. The government entity acknowledged in writing that actions were "private". (CR: See Plaintiff's Exhibit 4 Response to Level I Grievance page 2 at [6] and [7], as attached to Plaintiff's Response to Defendants' Second Motion To Dismiss.) But then, the government provided the resources for the actions to take place and used its own resources to *prevent* the Appellant from exercising his remedies under published policy. (CR: See Plaintiff's Exhibit 5 and 6--email exchange with PISD Attorney Brandy Davis--as attached to Plaintiff's Response to Defendants' Second Motion To Dismiss.)

In the present case the Appellee has capitalized on the idea that all things sounding in tort fall under the TTCA. However, that contradicts the statute itself and Justice Garza seems to agree. (See *City of Corpus Christi v Eby*, Not Reported in S.W3d, 2011 WL 1437002, Tex.App. - Corpus Christi, 2011).

The Appellant advanced the argument before the trial court that the Appellee's actions constituted a waiver-by-conduct of governmental immunity (CR: See Plaintiff's Response to Defendants' Second Motion To Dismiss page 3-7 at [8] and [9]; [11-13] and page 8 - 14 at [17-21]. Also see RR: Hearing before the Court, March 5, 2015, Motion To Dismiss page 11 at line 12 through page 13 at line 7.) The Appellant offered written evidence in his briefs (CR: See Plaintiff's

Response to Defendants' Second Motion To Dismiss, Plaintiff's Exhibits 1 through 7), which should have been considered by the trial court, (See *Catalina Development, Inc. v. County of El Paso*, 121 s.w.3d 704, 704 (tex.203), to demonstrate that a waiver-by-conduct did exist. The Appellee offered no evidence backing up its claim of official immunity given the facts of the case. Yet the courts have indicated the entity claiming immunity must make an immunity defense. (See *Gallegos v. Escalon*, 918 S. W. 2d 62 (Tex. App.—Corpus Christi 1996).

However, the trial judge stated, "The Court has reviewed the pleadings, arguments of counsel, both written and oral, and the authorities cited and presented." and erred in several respects. (CR: See Letter signed by trial judge the Honorable R. Bruce Boyer, March 9, 2015 which accompanied signed order to dismiss.)

Appellant made these arguments to the Trial Court:

1. Appellant's suit was filed under Texas Libel law and not the TTCA.

2. Appellant offered evidence of a waiver-by-conduct and pointed out that he was exercising "remedies additional."

3. Appellee offered NO affirmative defense of official immunity for its actions despite case law to the contrary.

4. The Trial Court was bound to consider the evidence on a case-by-case

- 14 -

basis but evidently did not. "Plaintiff urges the Court to consider the set of facts as enumerated to determine waiver of immunity by conduct." (CR: See Plaintiff's Response to Defendants' Second Motion To Dismiss page 13 at [20].)

5. Appellees acted outside their government function and duties and are not shielded by sovereign immunity or official immunity.

6. Appellant summarized for the Court: "Plaintiff's cause does not fall under the Texas Tort Claims Act. This is a defamation suit under Libel Law. The governmental entity gave permission to the Plaintiff to file suit by virtue of its clear actions of conduct outside its function and scope of duties. Immunity claims are moot. The Court need only look at the Appellee's own words to determine that they, them selves, didn't even consider this matter to be within their governmental function. Yet, and this is key, public resources were used in transmission, and spread of the libelous statements, and, in an effort to quash Appellant's efforts to have the matter heard within the system, so as to put to rest the lies that were told about him. What are the lies and the false statements of fact? They are statements that lead people to believe that the Appellant is a sexual predator--a stalker--an infamous crime of serious nature which carries with it not only social stigma, but serious prison time. Truth as a defense will fail miserably once the matter goes to trial." (CR: See Plaintiff's Response to Defendants' Second Motion To Dismiss page 13-14 at [21]. )

ARGUMENT

1. The trial court erred in dismissing the case under the Texas Tort Claims Act. Appellant made the argument that his suit was filed under the Libel Statute, (See CR: Original Petition at page 3, [4.1]; and see CR: Plaintiff's Response to Defendants' Motion to Dismiss at page 1-2, [2]; and Plaintiff's Response To Defendants' Second Motion To Dismiss, page 1 [1]), and *not* the Texas Tort Claims Act (See CR: Plaintiff's Response to Defendants' Motion to Dismiss at page 2-3, [9-10]). The Appellant made the argument that governmental immunity was defeated under a waiver-by-conduct (See CR: Plaintiff's Response to Defendants' Second Motion To Dismiss page 3-7 at [8] and [9]; [11-13] and page 8 - 14 at [17-21]. Also see RR: Hearing before the Court, March 5, 2015, Motion To Dismiss page 11 at line 12 through page 13 at line 7.) The Appellant offered written evidence in his briefs (See CR: Plaintiff's Response to Defendants' Second Motion To Dismiss, Plaintiff's Exhibits 1 through 7).

The trial judge wrote "The Court is bound not only by the statutory provisions of the Texas Tort Liability Act, but also the appellate interpretations of the same." (See CR: Judge's letter dated March 9, 2015 accompanying Order Granting Motion To Dismiss.)

Appellant argues that the trial judge had clear opportunity to apply the TTCA,

had he fully considered Appellant's arguments regarding "remedies additional" authorized by the TTCA statute itself and "waiver-by-conduct," (backed up by case law), and by applying it, he would not have had to dismiss the suit. (The TTCA is applied by not applying the irrelevant provisions and by applying the relevant one-- "remedies additional.") (See more below.)

(NOTE: Appellee obviously accepted Appellant's suit under Texas Civil Practice and Remedies Code Chapter 73 Libel law, which mandates the Plaintiff to sue the Defendant in his home district. Defendant's did not challenge the venue, which they could have done had the suit been filed under the TTCA. (See Texas Civil Practice and Remedies Code Title 2, Subtitle B, Chapter 15, Subchapter A, Sec. 15.002 (a) and Subchapter B, Sec. 15.017, LIBEL, SLANDER, OR INVASION OF PRIVACY.)

2. The trial court erred in applying the Texas Tort Claims Act with respect to a school district in a case that does not involve motor vehicles.

The Texas Tort Clims Act is self-limiting. The statute states: "Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district." ("CIVIL PRACTICE AND REMEDIES CODE. TITLE 5. GOVERNMENT LIABILITY. CHAPTER 101. TORT CLAIMS. SUBCHAPTER C. EXCLUSIONS AND EXCEPTIONS: Sec. 101.051. SCHOOL AND JUNIOR

COLLEGE DISTRICTS PARTIALLY EXCLUDED.) Appellant argued this to the court. (See CR: Plaintiff's Response to Defendants' Motion to Dismiss at page 3-4 [15]. Also see RR: Hearing before the Court, March 5, 2015, Motion To Dismiss page 11 at line 12 through page 13 at line 7.)

The Appellee seems to agree in stating, "What the Tort Claims Act does is, is it sets out a few exceptions to the general rule of sovereign immunity, and it also pro vides procedures by which a plaintiff can -- can pursue those exceptions." (See RR: Hearing before the Court, March 5, 2015, Motion To Dismiss page 6 at line 25 and page 7 at lines 1-3, Bret Walton speaking for Appellee.)

Appellant could not pursue *those exceptions* as there was no motor vehicle involved in the case. Therefore, the TTCA did not apply to the facts of the case and Appellant went to the Libel Law and to the task of breaking immunity protections by applying the waiver-by-conduct theory based upon the actions of the Appellees.

*Texas Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379 (Tex.App.-For4 Worth 2008 no pet) bolsters Appellant's argument that his suit is not under the Texas Tort Claims Act, as the Court of Appeals recognizes statutory limitations to the TTCA: "The legislature granted a limited waiver of immunity in the Texas Tort Claims Act, which permits suits to be brought against governmental units in certain

- 18 -

narrowly-defined circumstances. Tex. Dep't of Criminal Justice v. Miller, 51 S. W.3d 583, 587 (Tex.2001); see also Dallas County MHMR, 968 S. W. 2d at 341."

Appellant's suit does not fall under the Texas Tort Claims Act's "narrowly-defined circumstances." As stated, school districts are excluded except as pertaining to motor vehicles.

What this means is that when it comes to breaking governmental immunity, the TTCA gives the citizens a free pass if a motor vehicle is involved in a case. What it does *not* mean is that there are no other ways to defeat governmental immunity. Appellee made the argument before the trial judge that the TTCA suggests that school districts have governmental immunity no matter what, with the only exception of motor vehicles within the TTCA. But this is misleading.

"There's no waiver provided by the statute to allow Mr. Kirk to sue us, and the school district should be dismissed on those grounds. Basically, we still have immunity, is -- is the gist of the -- of the law." (See RR: Hearing before the Court, March 5, 2015, Motion To Dismiss page 9 at line 7-11, Bret Walton speaking for Appellee.)

Everyone agrees there is no motor vehicle involved in this case. By his own admission, then, if the trial judge is bound by the statute to apply the Texas Tort Claims Act only to school district cases in which motor vehicles are involved, then

the TTCA can't apply to this case and therefore it is a judicial error to dismiss the cause under the TTCA.

Further, The Appellee quotes from *Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954 (Tex.App.-Beaumont 1991, no writ), "An independent school district is an agency of the state and, while exercising governmental functions, is not answerable in a suit sounding in tort." (See CR: Reply Brief on Defendants' Motion To Dismiss, page 2 at [9].) However, Appellant has always maintained that Appellee *acted outside the exercise of governmental functions* and therefore is indeed answerable in a suit sounding in tort.

3. The trial court erred and violated the Texas Tort Claims Act by failing to allow Appellant to exercise provisions in the statute, to wit, "remedies additional".

Applying the Texas Tort Claims Act to all things sounding in tort with respect to election-of-remedies is self-contradictory, since the TTCA offers "REMEDIES ADDITIONAL." (See Sec. 101.003. REMEDIES ADDITIONAL. The remedies authorized by this chapter are in addition to any other legal remedies.") What remedies is the statute referring to if all things sounding in tort fall under the TTCA?

In *City of Corpus Christi v Eby*, Not Reported in S.W3d, 2011 WL 1437002, Tex.App. - Corpus Christi, 2011, Justice Dori Contrearas Garza writes, in a Concurring Memorandum Opinion, "However, I believe the premise underlying the

Garcia assumption--that 'the Tort Claims Act is the only, albeit limited, avenue for common law recovery against the government,' 253 S.W. 3d at 659--is wrong. On the contrary, it is eminently possible that a governmental unit's immunity to common-law tort claims may be waived by means other than the limited waiver provided in the Act."

Appellant believes Justice Garza is making an insightful statement. With respect to school districts, the TTCA offers limiting language and, it spells out to the citizens that there are *additional remedies* not specifically enumerated by the statute. The Appeals Court is asked to consider this apparent contradiction. What is a party supposed to do when the law says it applies only under specific circumstances, offers other options (other remedies) and then the Courts try to make the statute fit all situations despite the statutary language?

The trial judge attempted to do the right thing, but could not because of the contradiction between the language of the statute and what the Appellee says is the court interpretation. But maybe neither the statute, nor the courts, intended for the TTCA to prevent a suit in which the government entity, its employees and individuals *acted outside their duties and functions* to harm a citizen of the State of Texas.

The courts have also found that the TTCA election-of-remedies scheme does

not apply in all cases. When other remedies exist, the courts have allowed parties to exercise alternative theories and have not forced dismissal through the TTCA.

*Mission Consol. Independent School District v. Garcia,* 253 S. W. 3d 653 (Tex. 2008) was an age discrimination case and relates to the Texas Commission on Human Rights Act and raised a fundamental question of discrimination law. The court mentions the Tort Claims Act's election-of-remedies provision but goes on to find that, "the Act's election scheme does not bar the employees' recovery under the Texas Commission on Human Rights Act (TCHRA) because the Legislature has consented to suits against the government under the TCHRA." While the Appellant did not file under the TCHRA, he did file under an additional remedy and it is a judicial error to dismiss Appellant's case when the courts have allowed other causes to move forward using alternative theories, i.e. "remedies additional."

*Mission* demonstrates that the courts do allow "remedies additional" and that not all cases come under the Texas Tort Claims Act, as the Appellees' suggest.

The Legislature has given statutory consent to sue, waiving immunity in specific situations (Texas Tort Claims Act, Texas Commission on Human Rights Act) and, by clearly defining the tests that must be applied by a defendant in order to make an immunity claim. *Gallegos v. Escalon,* 918 S. W. 2d 62 (Tex. App.—

Corpus Christi 1996). There is no assumption that all governmental entities all the time, enjoy immunity. Barring a plaintiff without entertaining his theory and without requiring governmental units to make an immunity defense, if they so choose, in a required manner, would not lead to justice and is a judicial error.

4. The trial court erred in failing to require Appellee to present a defense of official immunity to back its claim of immunity.

In *Gallegos v. Escalon,* 918 S. W. 2d 62 (Tex. App.—Corpus Christi 1996) the Court found that a superintendent who allegedly made public statements defaming two former school board trustees was NOT protected by sovereign immunity because he failed to make his immunity case. The higher court affirmed the trial court's denial of the superintendent's summary judgment. Superintendent Gallegos asserted his immunity defense based upon the Texas Education Code, which says:

> "EDUCATION CODE
> TITLE 2. PUBLIC EDUCATION
> SUBTITLE D. EDUCATORS AND SCHOOL DISTRICT
> EMPLOYEES AND VOLUNTEERS
>
> CHAPTER 22. SCHOOL DISTRICT EMPLOYEES AND
> VOLUNTEERS
> Sec. 22.0511. IMMUNITY FROM LIABILITY. (a) A professional
> employee of a school district is not personally liable for any act that is
> incident to or within the scope of the duties of the employee's position
> of employment and that involves the exercise of judgment or
> discretion on the part of the employee, except in circumstances in

- 23 -

which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students."

Unfortunately for superintendent Gallegos, he was not able to adequately make his defense. The Appellees in the present cause also fall short in making an immunity defense based solely on the facts of the case because they cannot show that their documented actions were "incident to or within the scope of the duties of the employee's position of employment..." Furthermore, they did not even attempt mount an affirmative defense of official immunity before the trial court.

*Gallegos* is a case which spells out the Appellees' burden regarding immunity. This case also demonstrates that school teachers can be held accountable for their actions outside their governmental functions and duties.

In *Hinterlong v. Clements,* 109 S.W. 3d 611 (Texas App.—Fort Worth 2003), a student by the name of Matthew T. Hinterlong alleges that he was set up for expulsion by others, in retaliation for police involvement in some misuse by students of his home when he was out of town. The straight-A tennis playing Hinterlong was accused of having alcohol in his vehicle while at school. An anonymous tip was passed along to authorities, who searched the vehicle and found a "thimble full" of what "smelled" like alcohol. Hinterlong claimed he was set up and sought the name of the tipster.

The Court of Appeals dealt with a wide variety of issues, one of which was

- 24 -

whether or not Clements [a teacher in the district] and Arlington ISD had sovereign immunity against Hinterlong's claims, which included defamation. The Court found that Clements was not protected and points out that she was not performing actions incident to or within the scope of her professional duties.

The following except from the Hinterlong ruling is lengthy, but addresses several issues involved in the present cause.

"Additionally, real parties in interest fail to distinguish between immunity from suit and immunity from liability, which are two distinct principles. See *Tex. Dep 't of Transp. v. Jones,* 8 S. W. 3d 636, 638 (Tex. 1999). While immunity from suit (sovereign immunity) abridged claims at common law, immunity from liability (official immunity) is an affirmative defense to common law claims that must be pleaded or it is waived. See *Green Int'l, Inc. v. State,* 877 S. W.2d 428, 436-37 (Tex.App. -Austin 1994, writ dis,n 'd) (holding sovereign immunity is common-law doctrine that preceded Texas Constitution so application of doctrine to preclude litigation of breach of contract and quantum meruit claims does not violate open courts provision); *Jones,* 8 S.W.3d at 638 (recognizing distinction between immunity from liability, which is an affirmative defense that must be pleaded or it is waived, and immunity from suit, which is jurisdictional and requires complaining party to establish state's consent to be sued); *Hayes v. Patrick,* 71 S.W.3d 516, 521 (Tex.App.-Fort Worth 2002, no pet.) (noting official immunity is common law affirmative defense that protects government officers and employees from liability for conduct that would otherwise be actionable). Absent both pleading and proof of immunity, Clements can be held liable under Hinterlong's claims. See *Univ. of Houston v. Clark,* 38 S.W.3d 578, 580 (Tex.2000) (noting that official immunity is affirmative defense that protects government employees from personal liability, and that, to be entitled to summary judgment on immunity defense, employee must conclusively prove each element of defense); see also *Myers U. Doe,* 52 S.W. 3d 391, 395-96 (Tex.App.-Fort Worth 2001, pet. denied) (addressing school district employees' entitlement *628 to immunity if all

elements under section 22.051(a) of the Education Code are established); see also Tex. Educ. Code Ann. § 22.051 (a) (Vernon 1996) (stating that professional school district employees are not personally liable for actions incident to or within the scope of duties performed that involve the exercise of judgment or discretion, unless there is an excessive use of force or negligent discipline resulting in bodily injury to students).

"Clements is also not cloaked with immunity from personal liability where her actions are not incident to or within the scope of her professional duties or while she is performing duties that are ministerial and, therefore, do not involve the exercise of judgment or discretion. See Tex. Educ. Code Ann. § 22.051; Myers, 52 S. W. 3d at 396; cf. *Kassen v. Hatley*, 887 S. W. 2d 4, 11 (Tex. 1994) (holding that government-employed medical personnel are not immune from tort liability if the character of the discretion they exercise is medical and not governmental). Hinterlong's pleadings allege that Clement's acts and omissions involved ministerial duties and that, at certain times, Clements acted outside the scope of her employment or official duties. Hinterlong has, therefore, pleaded cognizable common law claims against Clements, subject to her affirmative defense of immunity.

"Accordingly, we conclude that Hinterlong has asserted well-established common law causes of action against Clements, the tipster, and the person or persons who planted the Ozarka water bottle. Regardless of whether the trial court later holds that Arlington ISD is sovereignly immune from suit, Hinterlong's assertion of these common law causes of action against Clements, the tipster, and the person or persons who planted the Ozarka water bottle satisfy the open courts predicate of assertion of well-established common law causes of action."

The trial court has erred in not recognizing that Appellant offered "cognizable common law claims" against Appellees, which defeated any hope of protection Appellees had under sovereign immunity. Appellant used Appellees' own documents to demonstrate that the offending actions were outside governmental duties and functions.

Furthermore, Appellant offered evidence to the trial judge to show Appellee

- 26 -

Humphrey also acted outside her duties and function. These acts constituted a well-established waiver-by-conduct.

Once the issue of sovereign immunity was defeated with the evidence, Appellee made no affirmative defense to underscore any claim of official immunity. The facts of the case show conduct that is outside the duties and functions of the employees, including the contract of employee Appellee school teacher Vaughan.

Because Appellees did not plead an affirmative defense for the official immunity, *Hinterlong* shows that it is waived.

The complaining party, Appellant Douglas Kirk, established the State's consent to be sued through a waiver-by-conduct, and then Appellee failed to defend against Appellant's evidence showing the conduct could not enjoy official immunity protection because it was outside established duties and functions.

In *Gonzalez v. Ison-Newsome*, 68 S. W. 3d 2 (Tex. App. --Dallas 1999) five school district employees allegedly ganged up on one of their own and slandered her to the press, including slander *per se*. The trial court rejected a summary judgment and the appeals Court affirmed the lower court's decision. It seems the crew on Gonzalez's side appealed to the higher court to reverse the decision based upon an affirmative defense of immunity as a matter of law. The Appeals Court,

found however, that Gonzalez did not do that, stating, "...appellants must prove conclusively all elements of that affirmative defense." The Court cited Swilley V. Hughes, 488 S. W. 488 S.W.2d 67, 67 (Tex. 1972).

The Court's words in *Gonzalez* are important:

> "The education code provides little guidance for determining what acts are incident to or within the scope of a professional school employee's duties. Likewise, few cases have analyzed this particular element of the education code immunity. The scope of employment analysis commonly used in cases involving agency law, however, is instructive. In this case, Ison-Newsome's claims relate to alleged intentional torts. Under well established agency law, the question of whether an intentional tort was within an employee's scope of employment can be determined by applying a respondeat superior analysis. See *Houston Transit Co. v. Felder*, 146 Tex. 428, 208 S.W.2d 880, 881 (1948). Under this analysis, an employee acts within his scope of employment if he acts within his general authority, in furtherance of the employer's business, and to accomplish an objective for which the employee was employed. *Mackey v. U.P. Enterprises, Inc.*, 935 S.W.2d 446, 453 (Tex.App.-Tyler 1996, no writ). 6 We apply this analysis to the summary judgment record presented here."

It should be noted that the Appellees in this present case cannot and have not demonstrated that the libelous e-mail authored by Vaughan and spread by Parks and Washington, and which was shut down in the grievance process by Humphrey, was in "furtherance of the employer's business, and to accomplish an objective for which the employee was employed." On the contrary, the PISD itself said, through employee Tamira Griffin, "The District will not take action against an employee or conduct an investigation related to matters outside the scope of his or her

employment..." referring to the matter raised by Vaughan and labeled by her as a "personal issue"--which was her mission to demonize Appellant Douglas Kirk and brand him as a stalker. That's hardly "in furtherance of the employer's business..." (See CR: Plaintiff's Response To Defendants' Second Motion To Dismiss, Plaintiff's Exhibit 4, August 2, 2013, Tamira Griffin Response to Level I Grievance page 2 at [6] and [7]).

5. The trial court erred in failing to recognize Appellant's claim of waiver of immunity granted by conduct (waiver-by-conduct), despite evidence produced by Appellant.

Calling a parent a "whore" and a "selfish pussy," and praying for Christmas that the parent "overdose and burn in hell," and calling the man [the Appellant] attempting to help that parent get away from a now legally admitted abusive husband, an "old ugly stalker," was probably not an assigned duty of a Sixth Grade Language Arts teacher and certainly did not "build a good public image of the District" as her contract specifies. (See: CR: Plaintiff's Response to Defendants' Second Motion To Dismiss, Plaintiff's Exhibit 2 Anika Vaughan Contract at [4.1].)

As Appellee Vaughan stated, it was a "personal issue" she wanted to bring to the attention of her employer on January 28, 2013, and spread around the District. She acted individually to create her e-mail relative to the Plaintiff and she used

publically owned resources spreading her views, which included false statements of fact. (See CR: Plaintiff's Response To Defendants' Second Motion To Dismiss, page 3-5 at [9] and see Plaintiff's Exhibit 1, January 28, 2013, Anika Vaughan Email Personal Issue.)

How do we know Anika Vaughan was acting individually and outside the scope of her duties?

First, she herself, says she is, by labeling the first e-mail "personal issue."

Second, when the Appellant became aware of the e-mail which contained so many false statements of fact, (several months after January 28, 2013, as a result of an Open Records Request which was answered by attorney Brandy Davis on July 1, 2013), he employed the Plano Independent School District's own published and board approved grievance procedure by filing a Level One Grievance on the matter on July 8, 2013. Associated with the Appellant's Grievance were 21 exhibits which he submitted for review to demonstrate that statements made by Anika Vaughan on January 28, 2013, were, in fact, false. (See CR: Plaintiff's Response To Defendants' Second Motion To Dismiss, attached Plaintiff's Exhibit 1, January 28, 2013, Anika Vaughan Email Personal Issue and Plaintiff's Exhibit 3, January 28, 2013 Anika \ Vaughan Email to PISD.)

PISD Chief Human Resources Officer Tamira Griffin [not a Defendant]

- 30 -

reviewed the Level One Grievance filed by the Appellant and issued a denial letter on August 2, 2013. The letter is the second means by which we know that Anika Vaughan was acting outside her duties when she wrote and published the false statements of fact. The letter has two very important admissions on behalf of PISD.

First, Griffin wrote, "The District has no interest in the private matters discussed in Ms. Vaughan's email and in your written statement and exhibits."

Second, Griffin wrote, "The District will not take action against an employee or conduct an investigation related to matters outside the scope of his or her employment unless the matters impact the employee's ability to effectively perform his or her job duties in accordance with District polices and standards."

(See CR: Plaintiff's Response To Defendants' Second Motion To Dismiss, page 6 at [12] and see See Plaintiff's Exhibit 1, January 28, 2013, Anika Vaughan Email Personal Issue. Also see Plaintiff's Exhibit 4, August 2, 2013, Tamira Griffin Response to Level I Grievance page 2 at [6] and [7].)

The statements in the Tamira Griffin letter clearly indicate that the governmental entity itself sees the actions of Anika Vaughan to be outside her function as a teacher and PISD effectively indicates they are washing their hands of the matter. But PISD is not free of the matter simply by declaring its lack of interest. Since the e-mail from Anika Vaughan was received by a variety of PISD

- 31 -

employees, including Appellees Joseph Parks and Courtney Washington and these individuals then acted upon the information supplied by Vaughan, and without questioning its truthfulness, they then acted outside their governmental function as well. The governmental function of the Director of Security, Joseph Parks, (a former 19 year veteran police officer who was previously employed by the Plano Police Department), would have been to investigate the claims made by Anika Vaughan, before acting against the Appellant. The same holds true of Courtney Washington, the principal who stated about the Appellant, "I am concerned that he may try to come to CMS, if what she is saying is accurate. We contact Plano PD and Safety and Security, as needed." (See CR: Plaintiff's Response To Defendants' Second Motion To Dismiss, attached Plaintiff's Exhibit 3, January 28, 2013 Anika \ Vaughan Email to PISD at Washington's comment.)

The Appellant is a Citizen of the United States of America and of the State of Texas. As such, he enjoys certain rights and privileges. He has no felony convictions, has never been arrested, has no criminal record and is a citizen in good standing. However, Courtney Washington makes it clear that her intention, if the Appellant comes to her school, is to contact the Director of Security and to contact the Plano Police. Why would she do that? Does she do that when any citizen visits her school? Is that a governmental function, to call the police on any

- 32 -

citizen who arrives on public property which is entrusted to the Board of Trustees by the citizen-owner taxpayers?

Appellee Nancy Humphrey also acted outside her government duties and function and Appellant clearly described to the trial judge her actions and offered proof of her activity relative to dismissing a related Level II Grievance on the matter. (See CR: Plaintiff's Response To Defendants' Second Motion To Dismiss, page 8 - 11 at [17] and Plaintiff's Exhibits 5, 6 and 7 referenced in the argument.)

In *Jerrell D. INMAN, Sr., Appellant, v. CITY OF KATY and Billy Johnson, in his Capacity as Assistant Chief of Police, Appellees,* 900 S. W.2d 871 (1995), there is a poignant paragraph: "Our decision here is consistent with our previous determination that a municipality is immune from an action for libel when the statements are alleged to have occurred 873*873 during the performance of a governmental function. *City of Dallas v. Moreau,* 718 S.W.2d 776, 779 (Tex.A Corpus Christi Christi 1986, writ ref'd n.r.e.) In *Moreau,* a city marshall was fired following an accusation that he shot his weapon without legal justification. Id. at 778. The letter of termination was circulated and a copy posted on the employee bulletin board. This court held that the action taken by the marshall's office was in the performance of a police function, and that the operation of a police department is a function for which the city is immune from suit. Id. at 779. The

libel alleged in *Moreau* is similar to the slander in this case."

Appellant notes that the VAUGHAN e-mail was not in furtherance of her duties as a 6th Grade teacher, not even close. But, she did use school district resources to publish her false statements of fact, as did others. This is the exact *opposite* of what happened in both the *Inman* and *Moreau* cases.

6. The trial court erred in failing to consider factual evidence presented by Appellant, on a case-by-case basis, to establish waiver-by-conduct.

Waiver-by-conduct of sovereign immunity is a viable legal principle, and, the courts are expected to make waiver decisions on a case-by-case basis, viewing carefully the facts of each case.

In *Catalina Development, Inc. v. County of El Paso*, 121 s.w.3d 704, 704 (Tex.203) where a contractor sued a government entity for shenanigans related to a contract bid, the Court clearly demonstrated that the Court will evaluate the waiver-by-conduct exception to sovereign immunity based upon the independent facts of each case, not as a categorical matter, or bright-line rule.

While the Court ruled that the County of El Paso was, in fact, protected by immunity, the case-by-case analysis premise was reinforced. In *Catalina*, the Court calls attention to another case in which waiver-by-conduct is addressed. The Court speaks:

"It is undisputed that El Paso County did not expressly waive its immunity from suit here. In *Federal Sign*, we noted that there might be circumstances 'where the State may waive its immunity by conduct other than simply executing a contract,' although under the facts of that case, it was not necessary to indicate what those circumstances might be. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 n. 1 (Tex.1997). Since *Federal Sign*, we have had several occasions to consider circumstances that were urged to constitute a waiver by conduct. See Peizel, 77 S.W.3d at 251-52 (county withheld money due under a construction contract pursuant to contract's liquidated-damages clause); *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856-57 (Tex.2002) (contractor sought to recover cost overruns allowed by contract's equitable-adjustments clause); *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 595 (Tex.2001) (contract disputes regarding cost overruns for completed work, and to recover for work partially performed under a contract that was subsequently terminated). We held that the facts these cases presented did not support an equitable waiver-by-conduct of the governmental entities' immunity."

As such, Appellant urged the trial Court to do the same in this present case, but, it does not appear as though the trial judge took the facts of the case into consideration before dismissing the case. (See RR: Hearing before the Court, March 5, 2015, Motion To Dismiss page 9 at line 11 through page 19 through line 14).

With all due respect to the trial judge, Appellant concludes that errors were made. Appellant was asked for help by a woman being subjected to domestic violence and when he assisted her, the husband complained to his sister, who took it upon herself to make false statements of fact about the Appellant to her

employer, which she labeled "personal." Without investigating the claims, individuals then reacted to the libelous material and spread the lies using taxpayer funded resources within the school district.

When the Appellant found out, he used the agency policy to attempt to set the record straight, only to be subjected to an effort to dispose of the matter without resolution. Appellees indicated the matter was outside the scope of their duties and function, thereby waiving by conduct any immunity defense (sovereign or official), and upon being sued, entered a general denial.

The trial court did not consider the facts of the case to establish waiver-by-conduct, and did not allow the "remedies additional" provision of the Texas Tort Claims Act before dismissing the case entirely. Appellant made the case before the trial judge that he filed suit under the Libel law, not under the TTCA, and that the government entity gave him permission to sue through conduct.

## PRAYER

Appellant, Douglas Kirk, respectfully, for the reasons stated above, asks the Court to reverse the judgment of the trial court and remand the case for trial.

# APPENDIX

Tab 1:     Final Judgment Order by the Trial Court

Tab 2:     Trial Court's Findings of Fact and Conclusions of Law

Tab 3:     Text of Relevant Laws

Texas CIVIL PRACTICE AND REMEDIES CODE, TITLE 4. LIABILITY IN TORT, CHAPTER 73. LIBEL

Texas CIVIL PRACTICE AND REMEDIES CODE, TITLE 5. GOVERNMENTAL LIABILITY, CHAPTER 101. TORT CLAIMS

EDUCATION CODE, TITLE 2. PUBLIC EDUCATION, SUBTITLE D. EDUCATORS AND SCHOOL DISTRICT EMPLOYEES AND VOLUNTEERS, CH.22

Tab 4:     Plano Independent School District Grievance Policy

PUBLIC COMPLAINTS GF (LEGAL)

PUBLIC COMPLAINTS GF (LEGAL)

Respectfully Submitted,

By _____
Douglas Kirk, pro se
Appellant
1850 Old Sattler Road
Canyon Lake, Texas 78132
Telephone: (830) 237-7313

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading or document has been served on all attorneys of record and any parties who are not represented by an attorney on ___4 August___, 2015.

**Counsel:**
Stephen R. Marsh
Texas State Bar No. 13019700
David Klosterboer & Associates
1301 East Collins Boulevard
Suite 490
Richardson, TX 75081
Telephone: (214) 570-6292

Via U.S. Mail, Certified Return Receipt Requested, No. 9590 9403063051835808549

_____
Douglas Kirk, *pro se*

# AFFIDAVIT

**State of Texas**
**County of Comal**

BEFORE ME, on this day personally appeared Douglas W. Kirk, known to me to be a credible person, competent in all respects, to make this Affidavit, and who, being by me duly sworn, upon his oath, deposed and stated as follows:

The Affiant is the *pro se* litigant and Appellant in this cause, who has read the above and foregoing Appellant's Brief on the Merits; and that every statement contained in this Affidavit is within his personal knowledge and true and correct.

_____
Affiant

Subscribed and sworn to be before me on _____ *AUGUST 3* ___, 2015 by

_____ DOUGLAS KIRK _____.

_____
Signature of Officer

_____
Notary's typed or printed name

_____
My commission expires

- 40 -

| DOUGLAS W. KIRK | § | IN THE DISTRICT COURT |
| | § | |
| | § | 274th JUDICIAL DISTRICT |
| v | § | |
| | § | |
| PLANO INDEPENDENT SCHOOL | § | |
| DISTRICT, et al | § | COMAL COUNTY, TEXAS |

## ORDER GRANTING MOTION TO DISMISS

On this the 5th day of March, 2015, came on to be re-heard, Defendant PLANO INDEPENDENT SCHOOL DISTRICT's Motion to Dismiss its employees, NANCY HUMPHREY, ANITA VAUGHN, JOSEPH PARKS and COURTNEY J. WASHINGTON. Also heard was PLANO INDEPENDENT SCHOOL DISTRICT's Motion to Dismiss the remaining claims against it. After considering the motions and hearing argument of counsel, the Court is of the opinion that Defendant's Motions to Dismiss should be, in all things, GRANTED.

IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED that Defendant's Motions to Dismiss are GRANTED and Plaintiff DOUGLAS W. KIRK shall take nothing by way of his suit against Defendants PLANO INDEPENDENT SCHOOL DISTRICT, NANCY HUMPHREY, ANITA VAUGHN, JOSEPH PARKS and COURTNEY J. WASHINGTON.

IT IS FURTHER ORDERED that each party shall bear its own costs of Court.

IT IS FURTHER ORDERED that any relief not granted herein is DENIED.

SIGNED this _____ day of March, 2015.

_____
JUDGE PRESIDING

Order Granting Motion to Dismiss



150 N. Seguin, Suite 317
New Braunfels, Texas 78130
(830) 221-1270
FAX: (830) 608-2030
E-Mail: boyerb@co.comal.tx.us

### R. BRUCE BOYER
### 22ND DISTRICT JUDGE

March 9, 2015

Mr. Douglas Kirk
1850 Old Sattler Road
Canyon Lake, TX 78133

Mr. Stephen Marsh
Attorney at Law
1301 E. Collins Blvd., Suite 490
Richardson, TX 75081

Mr. Bret Walton
Attorney at Law
9601 McAllister Frwy, Suite 910
San Antonio, TX 78216

RE: Cause No. C2014-0085C; Douglas W. Kirk vs. Plano I.S.D., et al.; In the 274th Judicial
District Court of Comal County, Texas

Counsel:

The Court has reviewed the pleadings, arguments of counsel, both written and oral, and the
authorities cited and presented.

The Court is bound not only by the statutory provisions of the Texas Tort Liability Act, but also the
appellate interpretations of the same.

As a consequence, the Defendants' Motion to Dismiss is **granted**. A copy of the signed Order is
enclosed. The Order is signed and entered March 9, 2015.

R. BRUCE BOYER
22nd DISTRICT JUDGE

RBB/slm

CIVIL PRACTICE AND REMEDIES CODE

TITLE 4. LIABILITY IN TORT

CHAPTER 73. LIBEL

SUBCHAPTER A.   GENERAL PROVISIONS

Sec. 73.001.   ELEMENTS OF LIBEL.   A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 73.002.   PRIVILEGED MATTERS.   (a)   The publication by a newspaper or other periodical of a matter covered by this section is privileged and is not a ground for a libel action.   This privilege does not extend to the republication of a matter if it is proved that the matter was republished with actual malice after it had ceased to be of public concern.
(b)   This section applies to:
(1)   a fair, true, and impartial account of:
(A)   a judicial proceeding, unless the court has prohibited publication of a matter because in its judgment the interests of justice demand that the matter not be published;
(B)   an official proceeding, other than a judicial proceeding, to administer the law;
(C)   an executive or legislative proceeding (including a proceeding of a legislative committee), a proceeding in or before a managing board of an educational or eleemosynary institution supported from the public revenue, of the governing body of a city or town, of a county commissioners court, and of a public school

board or a report of or debate and statements made in any of those proceedings;  or

(D)  the proceedings of a public meeting dealing with a public purpose, including statements and discussion at the meeting or other matters of public concern occurring at the meeting;  and

(2)  reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 73.003.  MITIGATING FACTORS.  (a)  To determine the extent and source of actual damages and to mitigate exemplary damages, the defendant in a libel action may give evidence of the following matters if they have been specially pleaded:

(1)  all material facts and circumstances surrounding the claim for damages and defenses to the claim;

(2)  all facts and circumstances under which the libelous publication was made;  and

(3)  any public apology, correction, or retraction of the libelous matter made and published by the defendant.

(b)  To mitigate exemplary damages, the defendant in a libel action may give evidence of the intention with which the libelous publication was made if the matter has been specially pleaded.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 73.004.  LIABILITY OF BROADCASTER.  (a)  A broadcaster is not liable in damages for a defamatory statement published or uttered in or as a part of a radio or television broadcast by one other than the broadcaster unless the complaining party proves that the broadcaster failed to exercise due care to prevent the publication or utterance of the statement in the broadcast.

(b)  In this section, "broadcaster" means an owner, licensee, or operator of a radio or television station or network of stations and the agents and employees of the owner, licensee, or operator.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


This section was amended by the 84th Legislature. Pending publication of the current statutes, see S.B. 627, 84th Legislature, Regular Session, for amendments affecting this section.

Sec. 73.005.  TRUTH A DEFENSE.  The truth of the statement in the publication on which an action for libel is based is a defense to the action.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 73.006.  OTHER DEFENSES.  This chapter does not affect the existence of common law, statutory law, or other defenses to libel.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


SUBCHAPTER B.  CORRECTION, CLARIFICATION, OR RETRACTION BY PUBLISHER

Sec. 73.051.  SHORT TITLE.  This subchapter may be cited as the Defamation Mitigation Act.  This subchapter shall be liberally construed.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.052.  PURPOSE.  The purpose of this subchapter is to provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.053.  DEFINITION.  In this subchapter, "person" means an individual, corporation, business trust, estate, trust,

partnership, association, joint venture, or other legal or commercial entity. The term does not include a government or governmental subdivision, agency, or instrumentality.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.

Sec. 73.054. APPLICABILITY. (a) This subchapter applies to a claim for relief, however characterized, from damages arising out of harm to personal reputation caused by the false content of a publication.

(b) This subchapter applies to all publications, including writings, broadcasts, oral communications, electronic transmissions, or other forms of transmitting information.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.

Sec. 73.055. REQUEST FOR CORRECTION, CLARIFICATION, OR RETRACTION. (a) A person may maintain an action for defamation only if:

(1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or

(2) the defendant has made a correction, clarification, or retraction.

(b) A request for a correction, clarification, or retraction is timely if made during the period of limitation for commencement of an action for defamation.

(c) If not later than the 90th day after receiving knowledge of the publication, the person does not request a correction, clarification, or retraction, the person may not recover exemplary damages.

(d) A request for a correction, clarification, or retraction is sufficient if it:

(1) is served on the publisher;

(2) is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to

have been defamed or by the person's authorized attorney or agent;

(3)  states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication;

(4)  alleges the defamatory meaning of the statement; and

(5)  specifies the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.

(e)  A period of limitation for commencement of an action under this section is tolled during the period allowed by Sections 73.056 and 73.057.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.056.  DISCLOSURE OF EVIDENCE OF FALSITY.  (a)  A person who has been requested to make a correction, clarification, or retraction may ask the person making the request to provide reasonably available information regarding the falsity of the allegedly defamatory statement not later than the 30th day after the date the person receives the request.  Any information requested under this section must be provided by the person seeking the correction, clarification, or retraction not later than the 30th day after the date the person receives the request.

(b)  If a correction, clarification, or retraction is not made, a person who, without good cause, fails to disclose the information requested under Subsection (a) may not recover exemplary damages, unless the publication was made with actual malice.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.057.  TIMELY AND SUFFICIENT CORRECTION, CLARIFICATION, OR RETRACTION.  (a)  A correction, clarification, or retraction is timely if it is made not later than the 30th day after receipt of:

(1)  the request for the correction, clarification, or retraction; or

(2)  the information requested under Section 73.056(a).

(b)  A correction, clarification, or retraction is sufficient if it is published in the same manner and medium as the original publication or, if that is not possible, with a prominence and in a manner and medium reasonably likely to reach substantially the same audience as the publication complained of and:

(1)  is publication of an acknowledgment that the statement specified as false and defamatory is erroneous;

(2)  is an allegation that the defamatory meaning arises from other than the express language of the publication and the publisher disclaims an intent to communicate that meaning or to assert its truth;

(3)  is a statement attributed to another person whom the publisher identifies and the publisher disclaims an intent to assert the truth of the statement; or

(4)  is publication of the requestor's statement of the facts, as set forth in a request for correction, clarification, or retraction, or a fair summary of the statement, exclusive of any portion that is defamatory of another, obscene, or otherwise improper for publication.

(c)  If a request for correction, clarification, or retraction has specified two or more statements as false and defamatory, the correction, clarification, or retraction may deal with the statements individually in any manner provided by Subsection (b).

(d)  Except as provided by Subsection (e), a correction, clarification, or retraction is published with a prominence and in a manner and medium reasonably likely to reach substantially the same audience as the publication complained of if:

(1)  it is published in a later issue, edition, or broadcast of the original publication;

(2)  publication is in the next practicable issue, edition, or broadcast of the original publication because the publication will not be published within the time limits established for a timely correction, clarification, or retraction; or

(3)  the original publication no longer exists and if the correction, clarification, or retraction is published in the newspaper with the largest general circulation in the region in

which the original publication was distributed.

(e) If the original publication was on the Internet, a correction, clarification, or retraction is published with a prominence and in a manner and medium reasonably likely to reach substantially the same audience as the publication complained of if the publisher appends to the original publication the correction, clarification, or retraction.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.058. CHALLENGES TO CORRECTION, CLARIFICATION, OR RETRACTION OR TO REQUEST FOR CORRECTION, CLARIFICATION, OR RETRACTION. (a) If a defendant in an action under this subchapter intends to rely on a timely and sufficient correction, clarification, or retraction, the defendant's intention to do so, and the correction, clarification, or retraction relied on, must be stated in a notice served on the plaintiff on the later of:
       (1) the 60th day after service of the citation; or
       (2) the 10th day after the date the correction, clarification, or retraction is made.
(b) A correction, clarification, or retraction is timely and sufficient unless the plaintiff challenges the timeliness or sufficiency not later than the 20th day after the date notice under Subsection (a) is served. If a plaintiff challenges the timeliness or sufficiency, the plaintiff must state the challenge in a motion to declare the correction, clarification, or retraction untimely or insufficient served not later than the 30th day after the date notice under Subsection (a) is served on the plaintiff or the 30th day after the date the correction, clarification, or retraction is made, whichever is later.
(c) If a defendant intends to challenge the sufficiency or timeliness of a request for a correction, clarification, or retraction, the defendant must state the challenge in a motion to declare the request insufficient or untimely served not later than the 60th day after the date of service of the citation.
(d) Unless there is a reasonable dispute regarding the actual contents of the request for correction, clarification, or

retraction, the sufficiency and timeliness of a request for correction, clarification, or retraction is a question of law. At the earliest appropriate time before trial, the court shall rule, as a matter of law, whether the request for correction, clarification, or retraction meets the requirements of this subchapter.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.059. EFFECT OF CORRECTION, CLARIFICATION, OR RETRACTION. If a correction, clarification, or retraction is made in accordance with this subchapter, regardless of whether the person claiming harm made a request, a person may not recover exemplary damages unless the publication was made with actual malice.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.060. SCOPE OF PROTECTION. A timely and sufficient correction, clarification, or retraction made by a person responsible for a publication constitutes a correction, clarification, or retraction made by all persons responsible for that publication but does not extend to an entity that republished the information.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.061. ADMISSIBILITY OF EVIDENCE OF CORRECTION, CLARIFICATION, OR RETRACTION. (a) A request for a correction, clarification, or retraction, the contents of the request, and the acceptance or refusal of the request are not admissible evidence at a trial.

(b) The fact that a correction, clarification, or retraction was made and the contents of the correction, clarification, or retraction are not admissible in evidence at trial except in

mitigation of damages under Section 73.003(a)(3). If a correction, clarification, or retraction is received into evidence, the request for the correction, clarification, or retraction may also be received into evidence.

(c) The fact that an offer of a correction, clarification, or retraction was made and the contents of the offer, and the fact that the correction, clarification, or retraction was refused, are not admissible in evidence at trial.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.


Sec. 73.062. ABATEMENT. (a) A person against whom a suit is pending who does not receive a written request for a correction, clarification, or retraction, as required by Section 73.055, may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending.

(b) A suit is automatically abated, in its entirety, without the order of the court, beginning on the 11th day after the date a plea in abatement is filed under Subsection (a) if the plea in abatement:

(1) is verified and alleges that the person against whom the suit is pending did not receive the written request as required by Section 73.055; and

(2) is not controverted in an affidavit filed by the person bringing the claim before the 11th day after the date on which the plea in abatement is filed.

(c) An abatement under Subsection (b) continues until the 60th day after the date that the written request is served or a later date agreed to by the parties. If a controverting affidavit is filed under Subsection (b)(2), a hearing on the plea in abatement will take place as soon as practical considering the court's docket.

(d) All statutory and judicial deadlines under the Texas Rules of Civil Procedure relating to a suit abated under Subsection (b), other than those provided in this section, will be stayed during the pendency of the abatement period under this section.

Added by Acts 2013, 83rd Leg., R.S., Ch. 950 (H.B. 1759), Sec. 2, eff. June 14, 2013.

CIVIL PRACTICE·AND REMEDIES CODE

TITLE 5. GOVERNMENTAL LIABILITY

CHAPTER 101. TORT CLAIMS

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 101.001.  DEFINITIONS.  In this chapter:
           (1)  "Emergency service organization" means:
                (A)  a volunteer fire department, rescue squad, or an emergency medical services provider that is:
                     (i)  operated by its members; and
                     (ii)  exempt from state taxes by being listed as an exempt organization under Section 151.310 or 171.083, Tax Code; or
                (B)  a local emergency management or homeland security organization that is:
                     (i)  formed and operated as a state resource in accordance with the statewide homeland security strategy developed by the governor under Section 421.002, Government Code; and
                     (ii)  responsive to the Texas Division of Emergency Management in carrying out an all-hazards emergency management program under Section 418.112, Government Code.
           (2)  "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.
           (3)  "Governmental unit" means:
                (A)  this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
                (B)  a political subdivision of this state, including

any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;

   (C) an emergency service organization; and

   (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

  (4) "Motor-driven equipment" does not include:

   (A) equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state; or

   (B) medical equipment, such as iron lungs, located in hospitals.

  (5) "Scope of employment" means the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority.

  (6) "State government" means an agency, board, commission, department, or office, other than a district or authority created under Article XVI, Section 59, of the Texas Constitution, that:

   (A) was created by the constitution or a statute of this state; and

   (B) has statewide jurisdiction.


Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1987, 70th Leg., ch. 693, Sec. 1, eff. June 19, 1987;  Acts 1991, 72nd Leg., ch. 476, Sec. 1, eff. Aug. 26, 1991;  Acts 1995, 74th Leg., ch. 827, Sec. 1, eff. Aug. 28, 1995;  Acts 1997, 75th Leg., ch. 968, Sec. 1, eff. Sept. 1, 1997.
Amended by:
 Acts 2011, 82nd Leg., R.S., Ch. 1101 (S.B. 1560), Sec. 1, eff. June 17, 2011.

Sec. 101.002.  SHORT TITLE.  This chapter may be cited as the Texas Tort Claims Act.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.003.  REMEDIES ADDITIONAL.  The remedies authorized by this chapter are in addition to any other legal remedies.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


SUBCHAPTER B. TORT LIABILITY OF GOVERNMENTAL UNITS

Sec. 101.021.  GOVERNMENTAL LIABILITY.  A governmental unit in the state is liable for:
(1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
(A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment;  and
(B)  the employee would be personally liable to the claimant according to Texas law;  and
(2)  personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.0211.  NO LIABILITY FOR JOINT ENTERPRISE.  (a) The common law doctrine of vicarious liability because of participation in a joint enterprise does not impose liability for a claim brought under this chapter on:
(1)  a water district created pursuant to either Sections 52(b)(1) and (2), Article III, or Section 59, Article XVI, Texas Constitution, regardless of how created; or
(2)  a municipality with respect to the use of a municipal

airport for space flight activities as defined by Section 100A.001 unless the municipality would otherwise be liable under Section 101.021.

(b)  This section does not affect a limitation on liability or damages provided by this chapter, including a limitation under Section 101.023.

Added by Acts 2001, 77th Leg., ch. 1423, Sec. 35, eff. June 17, 2001.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 50 (H.B. 278), Sec. 2, eff. September 1, 2013.


    Sec. 101.0215.  LIABILITY OF A MUNICIPALITY.  (a)  A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:
            (1)  police and fire protection and control;
            (2)  health and sanitation services;
            (3)  street construction and design;
            (4)  bridge construction and maintenance and street maintenance;
            (5)  cemeteries and cemetery care;
            (6)  garbage and solid waste removal, collection, and disposal;
            (7)  establishment and maintenance of jails;
            (8)  hospitals;
            (9)  sanitary and storm sewers;
            (10)  airports, including when used for space flight activities as defined by Section 100A.001;
            (11)  waterworks;
            (12)  repair garages;
            (13)  parks and zoos;
            (14)  museums;
            (15)  libraries and library maintenance;

(16)   civic, convention centers, or coliseums;

(17)   community, neighborhood, or senior citizen centers;

(18)   operation of emergency ambulance service;

(19)   dams and reservoirs;

(20)   warning signals;

(21)   regulation of traffic;

(22)   transportation systems;

(23)   recreational facilities, including but not limited to swimming pools, beaches, and marinas;

(24)   vehicle and motor driven equipment maintenance;

(25)   parking facilities;

(26)   tax collection;

(27)   firework displays;

(28)   building codes and inspection;

(29)   zoning, planning, and plat approval;

(30)   engineering functions;

(31)   maintenance of traffic signals, signs, and hazards;

(32)   water and sewer service;

(33)   animal control;

(34)   community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code;

(35)   latchkey programs conducted exclusively on a school campus under an interlocal agreement with the school district in which the school campus is located; and

(36)   enforcement of land use restrictions under Subchapter E, Chapter 212, Local Government Code.

(b)   This chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality, including but not limited to:

(1)   the operation and maintenance of a public utility;

(2)   amusements owned and operated by the municipality; and

(3)   any activity that is abnormally dangerous or ultrahazardous.

(c)   The proprietary functions of a municipality do not

include those governmental activities listed under Subsection (a).

Added by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.02, eff. Sept. 2, 1987. Amended by Acts 1997, 75th Leg., ch. 152, Sec. 1, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1170, Sec. 2, eff. June 18, 1999; Acts 2001, 77th Leg., ch. 1399, Sec. 1, eff. June 16, 2001.
Amended by:
        Acts 2013, 83rd Leg., R.S., Ch. 50 (H.B. 278), Sec. 1, eff. September 1, 2013.


        Sec. 101.022.  DUTY OWED:  PREMISE AND SPECIAL DEFECTS.  (a) Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.
        (b)  The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.
        (c)  If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.
Amended by:
        Acts 2005, 79th Leg., Ch. 281 (H.B. 2702), Sec. 2.88, eff. June 14, 2005.


        Sec. 101.023.  LIMITATION ON AMOUNT OF LIABILITY.  (a) Liability of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.
        (b)  Except as provided by Subsection (c), liability of a unit

of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

(c)  Liability of a municipality under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

(d)  Except as provided by Section 78.001, liability of an emergency service organization under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.03, eff. Sept. 2, 1987;  Acts 1995, 74th Leg., ch. 827, Sec. 2, eff. Aug. 28, 1995; Acts 1997, 75th Leg., ch. 968, Sec. 2, eff. Sept. 1, 1997.


Sec. 101.024.  EXEMPLARY DAMAGES.  This chapter does not authorize exemplary damages.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.025.  WAIVER OF GOVERNMENTAL IMMUNITY;  PERMISSION TO SUE.  (a)  Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

(b)  A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.026.  INDIVIDUAL'S IMMUNITY PRESERVED.  To the extent an employee has individual immunity from a tort claim for damages, it is not affected by this chapter.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.027.  LIABILITY INSURANCE.  (a)  Each governmental unit other than a unit of state government may purchase insurance policies protecting the unit and the unit's employees against claims under this chapter.  A unit of state government may purchase such a policy only to the extent that the unit is authorized or required to do so under other law.

(b)  The policies may relinquish to the insurer the right to investigate, defend, compromise, and settle any claim under this chapter to which the insurance coverage extends.

(c)  This state or a political subdivision of the state may not require an employee to purchase liability insurance as a condition of employment if the state or the political subdivision is insured by a liability insurance policy.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1999, 76th Leg., ch. 1499, Sec. 1.01, eff. Sept. 1, 1999.


Sec. 101.028.  WORKERS' COMPENSATION INSURANCE.  A governmental unit that has workers' compensation insurance or that accepts the workers' compensation laws of this state is entitled to the privileges and immunities granted by the workers' compensation laws of this state to private individuals and corporations.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.029.  LIABILITY FOR CERTAIN CONDUCT OF STATE PRISON INMATES.  (a)  The Department of Criminal Justice is liable for property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an inmate or state jail defendant housed in a facility operated by the department if:

(1)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment;

(2)  the inmate or defendant would be personally liable to

the claimant for the property damage, personal injury, or death according to Texas law were the inmate or defendant a private person acting in similar circumstances;  and

(3)  the act, omission, or negligence was committed by the inmate or defendant acting in the course and scope of a task or activity that:

(A)  the inmate or defendant performed at the request of an employee of the department;  and

(B)  the inmate or defendant performed under the control or supervision of the department.

(b)  A claimant may not name the inmate or state jail defendant whose act or omission gave rise to the claim as a codefendant in an action brought under this section.

(c)  A judgment in an action or a settlement of a claim against the Department of Criminal Justice under this section bars any action involving the same subject matter by the claimant against the inmate or state jail defendant whose act or omission gave rise to the claim.  A judgment in an action or a settlement of a claim against an inmate or state jail defendant bars any action involving the same subject matter by the claimant against the Department of Criminal Justice under this section.

(d)  This section does not apply to property damage, personal injury, or death sustained by an inmate or state jail defendant.

Added by Acts 1995, 74th Leg., ch. 321, Sec. 1.108, eff. Sept. 1, 1995.  Amended by Acts 1999, 76th Leg., ch. 313, Sec. 1, eff. Sept. 1, 1999.


SUBCHAPTER C. EXCLUSIONS AND EXCEPTIONS

Sec. 101.051.  SCHOOL AND JUNIOR COLLEGE DISTRICTS PARTIALLY EXCLUDED.  Except as to motor vehicles, this chapter does not apply to a school district or to a junior college district.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.052.  LEGISLATIVE.  This chapter does not apply to a claim based on an act or omission of the legislature or a member of

the legislature acting in his official capacity or to the legislative functions of a governmental unit.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.053.  JUDICIAL.  (a)  This chapter does not apply to a claim based on an act or omission of a court of this state or any member of a court of this state acting in his official capacity or to a judicial function of a governmental unit. "Official capacity" means all duties of office and includes administrative decisions or actions.

(b)  This chapter does not apply to a claim based on an act or omission of an employee in the execution of a lawful order of any court.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.04, eff. Sept. 2, 1987.


Sec. 101.054.  STATE MILITARY PERSONNEL.  This chapter does not apply to a claim arising from the activities of the state military forces when on active duty under the lawful orders of competent authority.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.055.  CERTAIN GOVERNMENTAL FUNCTIONS.  This chapter does not apply to a claim arising:

(1)  in connection with the assessment or collection of taxes by a governmental unit;

(2)  from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others;  or

(3)  from the failure to provide or the method of providing police or fire protection.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.05, eff. Sept. 2, 1987;  Acts 1995, 74th Leg., ch. 139, Sec. 1, eff. Sept. 1, 1995.


Sec. 101.056.  DISCRETIONARY POWERS.  This chapter does not apply to a claim based on:
(1)  the failure of a governmental unit to perform an act that the unit is not required by law to perform;  or
(2)  a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.057.  CIVIL DISOBEDIENCE AND CERTAIN INTENTIONAL TORTS.  This chapter does not apply to a claim:
(1)  based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion;  or
(2)  arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.058.  LANDOWNER'S LIABILITY.  To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under this chapter, Chapter 75 controls.

Added by Acts 1995, 74th Leg., ch. 520, Sec. 4, eff. Aug. 28, 1995.


Sec. 101.059.  ATTRACTIVE NUISANCES.  This chapter does not apply to a claim based on the theory of attractive nuisance.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


       Sec. 101.060.  TRAFFIC AND ROAD CONTROL DEVICES.  (a)  This
chapter does not apply to a claim arising from:
            (1)  the failure of a governmental unit initially to place
a traffic or road sign, signal, or warning device if the failure is
a result of discretionary action of the governmental unit;
            (2)  the absence, condition, or malfunction of a traffic
or road sign, signal, or warning device unless the absence,
condition, or malfunction is not corrected by the responsible
governmental unit within a reasonable time after notice;  or
            (3)  the removal or destruction of a traffic or road sign,
signal, or warning device by a third person unless the governmental
unit fails to correct the removal or destruction within a
reasonable time after actual notice.
       (b)  The signs, signals, and warning devices referred to in
this section are those used in connection with hazards normally
connected with the use of the roadway.
       (c)  This section does not apply to the duty to warn of
special defects such as excavations or roadway obstructions.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


       Sec. 101.061.  TORT COMMITTED BEFORE JANUARY 1, 1970.  This
chapter does not apply to a claim based on an act or omission that
occurred before January 1, 1970.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


       Sec. 101.062.  9-1-1 EMERGENCY SERVICE.  (a)  In this section,
"9-1-1 service" and "public agency" have the meanings assigned
those terms by Section 771.001, Health and Safety Code.
       (b)  This chapter applies to a claim against a public agency
that arises from an action of an employee of the public agency or a
volunteer under direction of the public agency and that involves
providing 9-1-1 service or responding to a 9-1-1 emergency call
only if the action violates a statute or ordinance applicable to

the action.

Added by Acts 1987, 70th Leg., ch. 236, Sec. 2, eff. Aug. 31, 1987. Amended by Acts 1991, 72nd Leg., ch. 14, Sec. 284(3), eff. Sept. 1, 1991.


Sec. 101.063.  MEMBERS OF PUBLIC HEALTH DISTRICT.  A governmental unit that is a member of a public health district is not liable under this chapter for any conduct of the district's personnel or for any condition or use of the district's property.

Added by Acts 1991, 72nd Leg., ch. 476, Sec. 2, eff. Aug. 26, 1991.


This section was amended by the 84th Legislature. Pending publication of the current statutes, see S.B. 450, 84th Legislature, Regular Session, for amendments affecting this section.

Sec. 101.064.  LAND ACQUIRED UNDER FORECLOSURE OF LIEN.  (a) This section applies only to a municipality that acquires land at a sale following the foreclosure of a lien held by the municipality.
        (b)  This chapter does not apply to a claim that:
            (1)  arises after the date the land was acquired and before the date the land is sold, conveyed, or exchanged by the municipality;  and
            (2)  arises from:
                (A)  the condition of the land;
                (B)  a premises defect on the land;  or
                (C)  an action committed by any person, other than an agent or employee of the municipality, on the land.
        (c)  In this section, the term "land" includes any building or improvement located on land acquired by a municipality.

Added by Acts 1995, 74th Leg., ch. 139, Sec. 5, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 442, Sec. 1, eff. Sept. 1, 1995.  Amended by Acts 1997, 75th Leg., ch. 712, Sec. 2, eff. June 17, 1997.


Sec. 101.065.  NEGLIGENCE OF OFF-DUTY LAW ENFORCEMENT

OFFICERS. This chapter does not apply to the wrongful act or omission or the negligence of an officer commissioned by the Department of Public Safety if the officer was not on active duty at the time the act, omission, or negligence occurred. This section applies without regard to whether the officer was wearing a uniform purchased under Section 411.0078, Government Code, at the time the act, omission, or negligence occurred.

Added by Acts 1995, 74th Leg., ch. 738, Sec. 2, eff. Sept. 1, 1995. Renumbered from Civil Practice and Remedies Code Sec. 101.058 by Acts 1997, 75th Leg., ch. 165, Sec. 31.01(9), eff. Sept. 1, 1997.


Sec. 101.066. COMPUTER DATE FAILURE. This chapter does not apply to a claim for property damage caused by a computer date failure as described by Section 147.003.

Added by Acts 1999, 76th Leg., ch. 128, Sec. 3, eff. May 19, 1999.


Sec. 101.067. GRAFFITI REMOVAL. This chapter does not apply to a claim for property damage caused by the removal of graffiti under Section 250.006, Local Government Code.

Added by Acts 2009, 81st Leg., R.S., Ch. 1130 (H.B. 2086), Sec. 27, eff. September 1, 2009.


SUBCHAPTER D. PROCEDURES

Sec. 101.101. NOTICE. (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
(1) the damage or injury claimed;
(2) the time and place of the incident; and
(3) the incident.
(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.
(c) The notice requirements provided or ratified and approved

by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.102.  COMMENCEMENT OF SUIT.  (a)  A suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises.

(b)  The pleadings of the suit must name as defendant the governmental unit against which liability is to be established.

(c)  In a suit against the state, citation must be served on the secretary of state.  In other suits, citation must be served as in other civil cases unless no method of service is provided by law, in which case service may be on the administrative head of the governmental unit being sued.  If the administrative head of the governmental unit is not available, the court in which the suit is pending may authorize service in any manner that affords the governmental unit a fair opportunity to answer and defend the suit.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1987, 70th Leg., 1st C.S., ch. 2, Sec. 3.06, eff. Sept. 2, 1987.


Sec. 101.103.  LEGAL REPRESENTATION.  (a)  The attorney general shall defend each action brought under this chapter against a governmental unit that has authority and jurisdiction coextensive with the geographical limits of this state.  The attorney general may be fully assisted by counsel provided by an insurance carrier.

(b)  A governmental unit having an area of jurisdiction smaller than the entire state shall employ its own counsel according to the organic act under which the unit operates, unless the governmental unit has relinquished to an insurance carrier the right to defend against the claim.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

Sec. 101.104.  EVIDENCE OF INSURANCE COVERAGE.  (a)  Neither the existence nor the amount of insurance held by a governmental unit is admissible in the trial of a suit under this chapter.

(b)  Neither the existence nor the amount of the insurance is subject to discovery.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.105.  SETTLEMENT.  (a)  A cause of action under this chapter may be settled and compromised by the governmental unit if, in a case involving the state the governor determines, or if, in other cases the governing body of the governmental unit determines, that the compromise is in the best interests of the governmental unit.

(b)  Approval is not required if the governmental unit has acquired insurance_ under this chapter.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.106.  ELECTION OF REMEDIES.  (a)  The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b)  The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

(c)  The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

(d)  A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.

(e)  If a suit is filed under this chapter against both a

governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f)  If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 2003, 78th Leg., ch. 204, Sec. 11.05, eff. Sept. 1, 2003.


Sec. 101.107.  PAYMENT AND COLLECTION OF JUDGMENT.  (a)  A judgment in a suit under this chapter may be enforced only in the same manner and to the same extent as other judgments against the governmental unit are enforceable as provided by law, unless the governmental unit has liability or indemnity insurance protection, in which case the holder of the judgment may collect the judgment, to the extent of the insurer's liability, as provided in the insurance or indemnity contract or policy or as otherwise provided by law.

(b)  A judgment or a portion of a judgment that is not payable by an insurer need not be paid by a governmental unit until the first fiscal year following the fiscal year in which the judgment becomes final.

(c)  If in a fiscal year the aggregate amount of judgments under this chapter against a governmental unit that become final, excluding the amount payable by an insurer, exceeds one percent of the unit's budgeted tax funds for the fiscal year, excluding general obligation debt service requirements, the governmental unit may pay the judgments in equal annual installments for a period of not more than five years.  If payments are extended under this subsection, the governmental unit shall pay interest on the unpaid balance at the rate provided by law.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.108.  AD VALOREM TAXES FOR PAYMENT OF JUDGMENT.  (a) A governmental unit not fully covered by liability insurance may levy an ad valorem tax for the payment of any final judgment under this chapter.

(b)  If necessary to pay the amount of a judgment, the ad valorem tax rate may exceed any legal tax rate limit applicable to the governmental unit except a limit imposed by the constitution.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.


Sec. 101.109.  PAYMENT OF CLAIMS AGAINST CERTAIN UNIVERSITIES. A claim under this chapter against a state-supported senior college or university is payable only by a direct legislative appropriation made to satisfy claims unless insurance has been acquired as provided by this chapter.  If insurance has been acquired, the claimant is entitled to payment to the extent of the coverage as in other cases.

Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

EDUCATION CODE

TITLE 2. PUBLIC EDUCATION

SUBTITLE D. EDUCATORS AND SCHOOL DISTRICT EMPLOYEES AND VOLUNTEERS

CHAPTER 22. SCHOOL DISTRICT EMPLOYEES AND VOLUNTEERS

SUBCHAPTER A. RIGHTS, DUTIES, AND BENEFITS

Sec. 22.001. SALARY DEDUCTIONS FOR PROFESSIONAL DUES. (a) A school district employee is entitled to have an amount deducted from the employee's salary for membership fees or dues to a professional organization. The employee must:

(1) file with the district a signed written request identifying the organization and specifying the number of pay periods per year the deductions are to be made; and

(2) inform the district of the total amount of the fees and dues for each year or have the organization notify the district of the amount.

(b) The district shall deduct the total amount of the fees or dues for a year in equal amounts per pay period for the number of periods specified by the employee. The deductions shall be made until the employee requests in writing that the deductions be discontinued.

(c) The school district may charge an administrative fee for making the deduction. A fee imposed for making a salary deduction under this section may not exceed either the actual administrative cost of making the deduction or the lowest fee the district charges for similar salary deductions, whichever is less.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.


Sec. 22.002. ASSIGNMENT, TRANSFER, OR PLEDGE OF COMPENSATION. (a) In this section, "school employee" means any person employed by a school district in an executive, administrative, or clerical capacity or as a superintendent, principal, teacher, or instructor.

(b) Any school employee's assignment, pledge, or transfer, as

SUBCHAPTER B. CIVIL IMMUNITY

Sec. 22.051. DEFINITION; OTHER IMMUNITY. (a) In this subchapter, "professional employee of a school district" includes:

(1) a superintendent, principal, teacher, including a substitute teacher, supervisor, social worker, school counselor, nurse, and teacher's aide employed by a school district;

(2) a teacher employed by a company that contracts with a school district to provide the teacher's services to the district;

(3) a student in an education preparation program participating in a field experience or internship;

(4) a school bus driver certified in accordance with standards and qualifications adopted by the Department of Public Safety of the State of Texas;

(5) a member of the board of trustees of an independent school district; and

(6) any other person employed by a school district whose employment requires certification and the exercise of discretion.

(b) The statutory immunity provided by this subchapter is in addition to and does not preempt the common law doctrine of official and governmental immunity.

Added by Acts 2003, 78th Leg., ch. 204, Sec. 15.01, eff. Sept. 1, 2003; Acts 2003, 78th Leg., ch. 1197, Sec. 1, eff. Sept. 1, 2003. Amended by:
Acts 2013, 83rd Leg., R.S., Ch. 443 (S.B. 715), Sec. 17, eff. June 14, 2013.

Sec. 22.0511. IMMUNITY FROM LIABILITY. (a) A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

(b) This section does not apply to the operation, use, or maintenance of any motor vehicle.

(c)  In addition to the immunity provided under this section and under other provisions of state law, an individual is entitled to any immunity and any other protections afforded under the Paul D. Coverdell Teacher Protection Act of 2001 (20 U.S.C. Section 6731 et seq.), as amended.  Nothing in this subsection shall be construed to limit or abridge any immunity or protection afforded an individual under state law.  For purposes of this subsection, "individual" includes a person who provides services to private schools, to the extent provided by federal law.

(d)  A school district may not by policy, contract, or administrative directive:

(1)  require a district employee to waive immunity from liability for an act for which the employee is immune from liability under this section; or

(2)  require a district employee who acts in good faith to pay for or replace property belonging to a student or other person that is or was in the possession of the employee because of an act that is incident to or within the scope of the duties of the employee's position of employment.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995. Renumbered from Sec. 22.051 and amended by Acts 2003, 78th Leg., ch. 204, Sec. 15.01, eff. Sept. 1, 2003;  Acts 2003, 78th Leg., ch. 1197, Sec. 1, eff. Sept. 1, 2003.
Amended by:
Acts 2007, 80th Leg., R.S., Ch. 116 (S.B. 370), Sec. 1, eff. May 17, 2007.


Sec. 22.0512.  IMMUNITY FROM DISCIPLINARY PROCEEDINGS FOR PROFESSIONAL EMPLOYEES.  (a)  A professional employee of a school district may not be subject to disciplinary proceedings for the employee's use of physical force against a student to the extent justified under Section 9.62, Penal Code.

(b)  In this section, "disciplinary proceeding" means:

(1)  an action brought by the school district employing a professional employee of a school district to discharge or suspend the employee or terminate or not renew the employee's term contract;  or

TAB 4



| | |
|---|---|
| **UNITED STATES CONSTITUTION** | The District shall take no action abridging the freedom of speech or the right of the people to petition the Board for redress of grievances. *U.S. Const. Amend. I, XIV* |
| | The Board may confine its meetings to specified subject matter and may hold nonpublic sessions to transact business. But when the Board sits in public meetings to conduct public business and hear the views of citizens, it may not discriminate between speakers on the basis of the content of their speech or the message it conveys. *Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 828 (1995); City of Madison v. Wis. Emp. Rel. Comm'n, 429 U.S. 167, 174 (1976); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)* |
| **TEXAS CONSTITUTION** | Citizens shall have the right, in a peaceable manner, to assemble together for their common good and to apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address, or remonstrance. *Tex. Const. Art. I, Sec. 27* |
| **RESPONSE TO COMPLAINTS** | There is no requirement that the Board negotiate or even respond to complaints. However, the Board must stop, look, and listen and must consider the petition, address, or remonstrance. *Professional Association of College Educators v. El Paso County Community [College] District, 678 S.W.2d 94 (Tex. App.—El Paso 1984, writ ref'd n.r.e.)* |
| **FEDERAL LAWS** <br> SECTION 504 | A district that receives federal financial assistance, directly or indirectly, and that employs fifteen or more persons shall adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by Section 504 of the Rehabilitation Act of 1973. *29 U.S.C. 794; 34 CFR 104.7(b)* |
| **AMERICANS WITH DISABILITIES ACT** | A district that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by the Code of Federal Regulations, Title 28, Part 35 (Americans with Disabilities Act regulations). *28 CFR 35.107* |
| **CLOSED MEETING** | The Board may conduct a closed meeting on a public complaint to the extent required or provided by law. [See BEC] |
| **RECORD OF PROCEEDINGS** | An appeal of the Board's decision to the Commissioner of Education shall be decided based on a review of the record developed at the District level. "Record" includes, at a minimum, an audible electronic recording or written transcript of all oral testimony or argument. *Education Code 7.057(c), (f)* |

It is the District's responsibility to make and preserve the records of the proceedings before the Board. If the District fails to create and preserve the record without good cause, all substantial evidence issues that require missing portions of the record for resolution shall be deemed against the District. The record shall include:

1.  A tape recording or a transcript of the hearing at the local level. If a tape recording is used:

    a.  The tape recording must be complete, audible, and clear; and

    b.  Each speaker must be clearly identified.

2.  All evidence admitted;

3.  All offers of proof;

4.  All written pleadings, motions, and intermediate rulings;

5.  A description of matters officially noticed;

6.  If applicable, the decision of the hearing examiner;

7.  A tape recording or transcript of the oral argument before the Board; and

8.  The decision of the Board.

*19 TAC 157.1073(d)*

DISRUPTION

It is a criminal offense for a person, with intent to prevent or disrupt a lawful meeting, to substantially obstruct or interfere with the ordinary conduct of a meeting by physical action or verbal utterance and thereby curtail the exercise of others' First Amendment rights. *Penal Code 42.05; Morehead v. State, 807 S.W. 2d 577 (Tex. Cr. App. 1991)*

---

**Note:**  Public complaints regarding instructional and library materials are addressed at EFA and complaints against peace officers are addressed at CKE.

---

| PROCEDURES | Board members understand that it is reasonable and expected that individuals from time to time will have complaints concerning school matters. In these instances complainants shall use the procedures provided in this policy. |
|---|---|
| COMPLAINTS | In this policy, the terms "complaint" and "grievance" shall have the same meaning. |

OTHER COMPLAINT PROCESSES

Complaints by members of the public shall be filed in accordance with this policy, except as required by the policies listed below. Some of these policies require appeals to be submitted in accordance with GF after the relevant complaint process:

1. Complaints concerning instructional materials shall be filed in accordance with EFA.

2. Complaints concerning a commissioned peace officer who is an employee of the District shall be filed in accordance with CKE.

3. Complaints concerning decisions on residency shall be filed in accordance with FD.

GUIDING PRINCIPLES

INFORMAL PROCESS

The Board encourages the public to discuss concerns with an appropriate administrator who has the authority to address the concerns. Concerns should be expressed as soon as possible to allow early resolution at the lowest possible administrative level.

Informal resolution shall be encouraged but shall not extend any deadlines in this policy, except by mutual written consent.

FORMAL PROCESS

An individual may initiate the formal process described below by timely filing a written complaint.

Even after initiating the formal complaint process, individuals are encouraged to seek informal resolution of their concerns. An individual whose concerns are resolved may withdraw a formal complaint at any time.

The process described in this policy shall not be construed to create new or additional rights beyond those granted by law or Board policy, nor to require a full evidentiary hearing or "mini-trial" at any level.

FREEDOM FROM RETALIATION

Neither the Board nor any District employee shall unlawfully retaliate against any individual for bringing a concern or complaint.

GENERAL PROVISIONS

FILING

Written complaints and appeal notices may be filed by hand-delivery, by electronic communication, including e-mail and fax, or by U.S. Mail. Hand-delivered filings shall be timely filed if received by the appropriate administrator or designee by the close of busi-

ness on the deadline. Filings submitted by electronic communication shall be timely filed if they are received by the close of business on the deadline, as indicated by the date/time shown on the electronic communication marked by the District's technology resources/electronic communications system. [See CQ] Mail filings shall be timely filed if they are postmarked by U.S. Mail on or before the deadline and received by the appropriate administrator or designated representative no more than three days after the deadline.

**SCHEDULING CONFERENCES**

The District shall make reasonable attempts to schedule conferences at a mutually agreeable time. If the individual fails to appear at a scheduled conference, the District may hold the conference and issue a decision in the individual's absence.

**RESPONSE**

At Levels One and Two, "response" shall mean a written communication to the individual from the appropriate administrator. Responses may be hand-delivered, sent by electronic communication to the individual's e-mail address of record, or sent by U.S. Mail to the individual's mailing address of record. Mailed responses shall be timely if they are postmarked by U.S. Mail on or before the deadline. Filings submitted by electronic communication shall be timely filed if they are received by the close of business on the deadline, as indicated by the date/time shown on the electronic communication marked by the District's technology resources/ electronic communications system. [See CQ]

**DAYS**

"Days" shall mean District business days. In calculating time lines under this policy, the day a document is filed is "day zero." The following business day is "day one."

**REPRESENTATIVE**

"Representative" shall mean any person who or organization that is designated by an individual to represent the individual in the complaint process.

The individual may designate a representative through written notice to the District at any level of this process. If the individual designates a representative with fewer than three days' notice to the District before a scheduled conference or hearing, the District may reschedule the conference or hearing to a later date, if desired, in order to include the District's counsel. The District may be represented by counsel at any level of the process.

**CONSOLIDATING COMPLAINTS**

Complaints arising out of an event or a series of related events shall be addressed in one complaint. An individual shall not file separate or serial complaints arising from any event or series of events that have been or could have been addressed in a previous complaint.

UNTIMELY FILINGS

All time limits shall be strictly followed unless modified by mutual written consent.

If a written complaint or appeal notice is not timely filed, the complaint may be dismissed, on written notice to the individual, at any point during the complaint process. The individual may appeal the dismissal by seeking review in writing within ten days from the date of the written dismissal notice, starting at the level at which the complaint was dismissed. Such appeal shall be limited to the issue of timeliness.

COSTS INCURRED

Each party shall pay its own costs incurred in the course of the complaint.

WRITTEN COMPLAINT AND APPEAL

Complaints and appeals under this policy shall be submitted in writing.

Copies of any documents that support the complaint should be attached to the written complaint. If the individual does not have copies of these documents, they may be presented at the Level One conference. After the Level One conference, no new documents may be submitted by the individual unless the individual did not know the documents existed before the Level One conference.

A written complaint or appeal that is incomplete in any material aspect may be dismissed but may be refiled with all the required information if the refiling is within the designated time for filing.

LEVEL ONE

Complaints must be filed:

1.  Within 15 days of the date the individual first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance; and

2.  With the lowest level administrator who has the authority to remedy the alleged problem.

    If the only administrator who has authority to remedy the alleged problem is the Superintendent or designee, the complaint may begin at Level Two following the procedure, including deadlines, for filing the written complaint at Level One.

If the complaint is not filed with the appropriate administrator, the receiving administrator must note the date and time the written complaint was received and immediately forward the written complaint to the appropriate administrator.

The appropriate administrator shall investigate as necessary and schedule a conference with the individual within ten days after receipt of the written complaint. The administrator may set reasonable time limits for the conference.

Absent extenuating circumstances, the administrator shall provide the individual a written response within ten days following the conference. In reaching a decision, the administrator may consider information provided at the Level One conference and any other relevant documents or information the administrator believes will help resolve the complaint.

**LEVEL TWO**

If the individual did not receive the relief requested at Level One or if the time for a response has expired, he or she may request a conference with the Superintendent or designee to appeal the Level One decision.

The appeal notice must be filed in writing within ten days of the date of the written Level One response or, if no response was received, within ten days of the Level One response deadline.

After receiving notice of the appeal, the Level One administrator shall prepare and forward a record of the Level One complaint to the Level Two administrator. The individual may request a copy of the Level One record.

The Level One record shall include:

1. The written complaint and any attachments.

2. All other documents submitted by the individual at Level One.

3. The written response issued at Level One and any attachments.

4. All other documents relied upon by the Level One administrator in reaching the Level One decision.

The Superintendent or designee shall schedule a conference within ten days after the appeal notice is filed. The conference shall be limited to the issues and documents considered at Level One. At the conference, the individual may provide information concerning any documents or information relied upon by the administration for the Level One decision. The Superintendent or designee may set reasonable time limits for the conference.

The Superintendent or designee shall provide the individual a written response within ten days following the conference. In reaching a decision, the Superintendent or designee may consider the Level One record, information provided at the Level Two conference, and any other relevant documents or information the Superintendent or designee believes will help resolve the complaint.

Recordings of the Level One and Level Two conferences, if any, shall be maintained with the Level One and Level Two records.

**LEVEL THREE**

If the individual did not receive the relief requested at Level Two or if the time for a response has expired, he or she may appeal the decision to the Board.

The appeal notice must be filed in writing within ten days of the date of the written Level Two response or, if no response was received, within ten days of the Level Two response deadline.

The Superintendent or designee shall inform the individual of the date, time, and place of the Board meeting at which the complaint will be on the agenda for presentation to the Board.

The Superintendent or designee shall provide the Board the record of the Level Two appeal. The individual may request a copy of the Level Two record.

The Level Two record shall include:

1.    The Level One record.

2.    The notice of appeal from Level One to Level Two.

3.    The written response issued at Level Two and any attachments.

4.    All other documents relied upon by the administration in reaching the Level Two decision.

The appeal shall be limited to the issues and documents considered at Level Two, except that if at the Level Three hearing the administration intends to rely on evidence not included in the Level Two record, the administration shall provide the individual notice of the nature of the evidence at least three days before the hearing.

The District shall determine whether the complaint will be presented in open or closed meeting in accordance with the Texas Open Meetings Act and other applicable law. [See BE]

The presiding officer may set reasonable time limits and guidelines for the presentation, including an opportunity for the individual and administration to each make a presentation and provide rebuttal and an opportunity for questioning by the Board. The Board shall hear the complaint and may request that the administration provide an explanation for the decisions at the preceding levels.

In addition to any other record of the Board meeting required by law, the Board shall prepare a separate record of the Level Three presentation. The Level Three presentation, including the presentation by the individual or his or her representative, any presentation from the administration, and questions from the Board with re-

sponses, shall be recorded by audio recording, video/audio recording, or court reporter.

The Board shall then consider the complaint. It may give notice of its decision orally or in writing at any time up to and including the next regularly scheduled Board meeting. If the Board does not make a decision regarding the complaint by the end of the next regularly scheduled meeting, the lack of a response by the Board upholds the administrative decision at Level Two.